FILED & ENTERED

AUG 02 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Palmdale Hills Property, LLC, and related Debtors<br><br><br><br>Debtor(s). | CHAPTER 11<br><br>Case No.:  08-bk-17206-ES<br>Adv No:  1:16-ap-01120-GM<br>(re: SunCal Marblehead, LLC)<br><br>**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART  THE TRUSTEE'S MOTION FOR PARTIAL SUMMARY ADJUDICATION** |
| Steven M Speier<br><br>Plaintiff(s),<br>     v.<br><br>Argent Management, LLC,  SunCal Management LLC<br><br><br>Defendant(s), | Date:    May 30, 2017<br>Time:    10:00 a.m.<br>Courtroom:  303 |

Plaintiff Stephen M. Speier (the "Trustee"), as chapter 11 trustee for debtor SunCal Marblehead, LLC (the "Debtor"), has brought a motion for partial summary adjudication of his restitution and/or unjust enrichment claim for relief against defendant SunCal Management, LLC ("SCM" and with Argent Management, Inc. ("Argent"), the "Defendants").

# Table of Contents

**BACKGROUND AND OVERVIEW** ............................................................................ 1

**MOTION** ....................................................................................................................... 5

**OPPOSITION** ............................................................................................................... 9

**REPLY** ......................................................................................................................... 15

**LEGAL STANDARDS** ................................................................................................. 20

**ANALYSIS** ................................................................................................................... 22

I.    The Trustee has shown as a matter of undisputed fact that SCM received a benefit from the Debtor: the payment of $9 million of Management Fees ................. 22

II.    The Trustee has shown as a matter of undisputed fact that SCM's retention of the Management Fees was unjust .............................................................................. 22

    A.    In the Declaratory Relief Orders, the Court found that SCM had no legal entitlement to receive Management Fees from the Debtor ....................................... 22

    B.    The Court will apply these findings from the Declaratory Relief Orders as law of the case ...................................................................................................................... 23

    C.    SCM's lack of legal entitlement establishes that its retention of the Management Fee payments is unjust .................................................................. 26

III.    It nonetheless remains a matter of disputed fact whether SCM's receipt and retention of the Management Fee payments constitute actionable unjust enrichment under California law ................................................................................................... 27

    A.    Existence of a governing contract, "receipt of the exchange expected," and equitable principles from fraudulent transfer law are not applicable ...................... 27

        1.    Existence of a contract governing the rights of the parties ........................ 27

        3.    Fraudulent transfer precedent .................................................................... 31

    B.    "Voluntary Payment" and "Incidental Benefit" Doctrines may be applicable .... 31

        1.    Voluntary Payment Doctrine ...................................................................... 31

        2.    Incidental Benefit to the Debtor ................................................................. 33

IV.    Affirmative Defenses ............................................................................................ 37

    A.    Equitable estoppel and *res judicata* ............................................................. 37

        1.    Res Judicata ............................................................................................... 37

        2.    Equitable Estoppel ...................................................................................... 38

B.  Laches and Statute of Limitations ............................................................... 39

   1.  Laches .................................................................................................. 39

   2.  Statute of Limitations ........................................................................ 41

      1.  The FAC Dismissal Order ........................................................ 41

      2.  Applicable Statute of Limitations ........................................... 42

      3.  Applicability of §546(a) ........................................................... 44

**RULING** ............................................................................................................ 46

**EVIDENTIARY OBJECTIONS** ...................................................................... 46

## BACKGROUND AND OVERVIEW

This motion for partial summary adjudication is made in one of twelve related adversary proceedings now before this Court. The twelve debtors involved in these adversary proceedings are in turn part of a larger related group of twenty-six debtors (the "SunCal Debtors") that were formed to develop residential real estate projects in the Western United States (the "Projects"). (The Debtor's project was located in Orange County and is known as the "Project" or the "Marblehead Project.")

Defendant SCM was formed to provide development management services to the SunCal Debtors.  Defendant Argent allegedly also provided management services to the Debtors and is allegedly a successor-in-interest, alter ego, *etc.* of SCM.

Each of the Projects had received funding from Lehman Brothers Holding, Inc. and related entities (collectively "Lehman"), which had first-priority deeds of trust and equity interests in each Project, and had also agreed to provide continuing funding. Lehman's failure to provide that funding appears to have precipitated the chapter 11 filings (seventeen voluntary and nine involuntary) of the SunCal Debtors in November 2008.

The Trustee had been appointed the chapter 11 trustee for each of the involuntary SunCal Debtors, including the Debtor, and - through two plans of reorganization governing various SunCal Debtors that were each confirmed in January 2012 – was appointed the liquidating trustee of most of the SunCal Debtors, including the Debtor.

In May 2012, the Trustee filed the twelve subject complaints (which were twice subsequently amended) against the Defendants seeking to recover substantial

payments for management fees and expenses made by the twelve relevant SunCal

Debtors to SCM during the four-year period prior to each SunCal Debtor's bankruptcy,

by asserting claims for breach of contract, restitution/unjust enrichment, fraudulent

transfer, and preferential transfer.  (The operative Second Amended Complaint (the

"SAC") in this proceeding was filed on May 14, 2014.)

In this adversary proceeding, these management fees and expenses were

invoiced by SCM pursuant to a Development Management Agreement dated June 10,

2005 ("DMA") between SCM and SCC JV Ventures, LLC ("SCC JV Ventures"). [Ex. B to

Ex. 3 of Request for Judicial Notice in support of the Motion (dkt. 435; "Motion RJN")]

SCC JV Ventures is the operating member and 15% owner of SunCal Master JV,

LLC ("Grandparent"), which in turn is the sole owner/member of SunCal Marblehead

Mezz Borrower, LLC ("Parent"), which in turn is the sole owner/member of the Debtor.

(Lehman was the owner of the remaining 85% of the Grandparent. Lehman and SCC

JV Ventures entered into a "Grandparent Operating Agreement," governing the

operation of the Grandparent.

In this motion, the Trustee is seeking adjudication of his unjust

enrichment/restitution claim against SCM seeking the return of $9,163,489 paid by the

Debtor to SCM between June 10, 2005 and the Debtor's November 2008 petition date.

Although the parties' legal arguments are varied and complex, the Trustee is essentially

arguing that the Debtor has no legal responsibility for these fees: the DMA is the

exclusive document governing the fees and the DMA provides for the payment of the

fees by SCC JV Ventures, not the Debtor.  SCM is essentially arguing that the

management fees were for developing the Marblehead Project, which was the Debtor's

property, so these fees were the Debtor's responsibility and the parties' course of

1   dealing and other contracts support this understanding.

2

3
4   **PLAINTIFF'S UNDISPUTED FACTS (omitting facts set forth above and
    edited for brevity and clarity)**

5

6   • The DMA vested SCM with the responsibility of performing certain development

7      management services for the Marblehead Project, providing in part:

8              The [Debtor] is the owner of that certain real property … commonly
9         known as the "Marblehead Coastal Project" (the "Property"). It is the intent
          of [Debtor] to improve and develop the Property to create buildable
          residential lots for sale to merchant builders and, if applicable, commercial
10        lots for sale to other developers. . . .

11             SCC JV Ventures, as the Operating Member of SunCal Masters JV,
          is obligated to perform certain development management functions with
12        respect to the Project and desires to engage the services of [SCM] to
          perform certain of such development management functions, as specified
13        in this Agreement.

14             [SCM] possesses unique and valuable knowledge of the Property
          and the Project and has sufficient personnel, accounting systems and
15        other infrastructure in place so as to allow it to perform the required
          development, marketing, and sale of the Project. For that reason, SCC JV
16        Ventures desires to engage the services of [SCM] to perform the
          development and management functions set forth below …
17        ….
18             Subject to the direction of SCC JV Ventures, [SCM] shall use its
          best efforts … to timely and professionally perform, contract for or
19        supervise all Development and Sale Services & Functions that are
          required to be provided in connection with the development, marketing
20        and sale of the Project, including all services in connection therewith that
          may be requested by SCC JV Ventures. [SCM] shall at all times use its
21        best efforts … to ensure that all Development and Sale Services &
          Functions are performed (i) within the time periods required therefor, and
22        (ii) in the manner (and up to the standards) as required by SCC JV
          Ventures.
23   [DMA [Ex. B to Ex. 3 of Motion RFN] Recitals A, B & C; §1.1]

24
     • The DMA establishes the amount of management fees SCC JV Ventures was to
25
        pay SCM for its management services, providing in part:
26

27             As compensation for the performance of the Development and Sale
28        Services & Functions and the other duties and services to be performed
          by SCM hereunder, SCC JV Ventures shall pay to Development Manager

> (i) a management fee (the "Operating Management Fee") in an amount equal to three percent (3%) of (a) the gross revenue derived from the sale of the Property, and (b) the net proceeds received from the funding of any community facilities district ("CFD") formed in connection with the development and sale of the Project . . . collectively, the "Gross Revenues"), and (ii) a sales management fee (the "Sales Management Fee") in an amount equal to one percent (1%) of the Gross Revenues (collectively, the "Management Fee").

[DMA §5.1]

- The DMA provides for the payment of two-thirds of the Operating Management Fee during the development of the Marblehead Project:

> It is acknowledged and agreed that a portion of the Operating Management Fee in the amount of at least one-third (1/3) of the Operating Management Fee shall be deferred as provided in the [Grandparent Operating Agreement]. The remaining balance of the Operating Management Fee that is not deferred shall be paid in equal periodic installments over the term of the development and sale of the Project. . . .

[DMA §5.1]

- Bruce Cook signed the DMA on SCM's and SCC JV Ventures' behalf in his capacity as General Counsel for both entities.

- The DMA contains a California choice of law provision.

- From the time that SCM first provided Development Management Services on June 10, 2005, through November 2008, when the Debtor's bankruptcy case was commenced by the filing of an involuntary bankruptcy petition, SCM issued invoices to the Debtor for Development Management Services. The Debtor routinely paid invoices when presented until October 2007. From June 2005 through the Petition Date, the Debtor paid SCM $9,163,489 in management fees.

- The Court granted the Trustee's Motion for Partial Summary Adjudication of His Breach of Contract Claim for Relief, finding that "the Debtor is a third party beneficiary of the [DMA]." [Dkt. 422 & Ex. 11 to Motion RJN]

- The DMA states it cannot be "changed, modified, terminated or discharged in whole or in part except by an instrument in writing signed by both parties, or their respective successors or assigns, or otherwise as provided in this Agreement." [DMA §9.3]

- The Trustee filed a motion for partial summary adjudication of his declaratory relief cause of action on August 21, 2015, requesting that the Court enter two specific findings (the "Declaratory Relief MSA"). The Court granted the Declaratory Relief MSA, finding that

   (1) The Debtor was not a party to any written agreement, including the [DMA], requiring it to pay management fees of SCM or otherwise contractually obligated at any time to pay management fees to SCM; and (2) SCM has no claim to receive management fees from the Debtor under a theory of an oral or implied contract or under theories of unjust enrichment, quantum meruit, or another similar equitable theory.

   [Dkt. 378 & Ex. 8 to Motion RJN; the "First Declaratory Relief Order"]

- The Trustee filed a motion for correction of the Court's order asking the Court to enter the specific findings the Trustee had requested in the Declaratory Relief MSA (the "Motion to Correct"). The Court granted the motion and corrected the language of Finding (2) in the First Declaratory Relief Order to read:

   [t]he DMA's existence precluded and precludes SCM from receiving management fees from the Debtors under applicable law based on an oral or implied contract or a theory of unjust enrichment, quantum meruit or another similar 'equitable' theory.

   [Dkt. 427 and Ex. 10 to Motion RJN; the "Correction Declaratory Relief Order" and with the First Declaratory Relief Order, the "Declaratory Relief Orders"]

## **MOTION**

SCM and SCC JV Ventures entered into the DMA, which provides that **SCC JV**

**Ventures** (not the Debtor) hired SCM to perform development management functions for the Marblehead Project and agreed to pay the Management Fee to SCM.

SCM, SCC JV Ventures, and the Debtor shared the same general counsel (Bruce Cook, who executed the DMA on behalf of both SCM and SCC JV Ventures), so SCM had to be aware of the provisions making SCC JV Ventures responsible for the payment of SCM's Management Fee.  In fact, SCM entered into Development Management Agreements with other SunCal Debtors that specifically identify the respective SunCal Debtors as responsible for paying SCM's management fee.  These facts indicate that if SCM had intended to contractually obligate the Debtor to pay the Management Fee, it could and would have done so.

Notwithstanding the specific language of the DMA, the Debtor paid SCM's management fees from June 10, 2005 until the November 16, 2008 petition date for a total of at least $9,163,489. SCM issued invoices, which were routinely paid. (As the Debtor had no employees, SCM's employees processed the invoices on SCM's behalf and issued the Debtor's payments to SCM.)

This Court has already held that the DMA's existence precludes SCM from receiving the Management Fee from the Debtor under applicable law, pursuant to the Declaratory Relief Orders (as quoted above).

Under Fed. R. Civ. P. 56, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden of informing the court of the basis for its motion and identifying the evidence demonstrating the absence of a genuine issue of material fact.  The burden then shifts to the non-moving party, who

must come forward with specific facts showing that there is a genuine issue for trial. This burden is not a light one.

The Court should apply California substantive law, as it is adjudicating state law claims over which it has supplemental jurisdiction.  The DMA provides for the application of California law. California courts have held that where two sophisticated commercial entities agree to a choice of law clause, the most reasonable explanation is that they intend it to apply to all causes of action regarding their contract.  The Court has found that the Debtor is a third-party beneficiary of the DMA. Furthermore, the Marblehead Project is located in California and SCM's management services were performed in California.

Under California law, a claim for unjust enrichment and restitution requires: receipt of a benefit and unjust retention of that benefit at the expense of another.  SCM clearly received a benefit - $9,163,489 in Management Fees - from the Debtor. SCM's retention of these Management Fees is unjust on two independent grounds: (i) there is no legal justification for SCM to retain these Management Fees so they cannot conscientiously be retained and (ii) SCM knows the circumstances giving rise to the Debtor's unjust enrichment claim.

First, SCM is not legally entitled to receive these fees from the Debtor, because the basis for the payment of Management Fees to SCM is the DMA, which expressly provides for the payment of the Management Fees by SCC JV Ventures, *not the Debtor*.  In its oral ruling in support of the First Declaratory Relief Order, the Court roundly rejected SCM's argument that the DMA obligated the Debtor to pay these Management Fees to SCM:

> While Defendants agree that the Debtors did not sign the DMA[s], they argue that the DMA plainly identifies the Debtors as beneficiaries of the services to be

provided by SCM, and as the ultimate party responsible to pay for these services. [Citation omitted.]  The plain terms of the DMA do not support this argument. . . .

. . .

[P]ursuant to section 5.1 of the DMAs, management fees were to be paid by the Third Party Entities [such as SCC JV Ventures].  The Debtors were not parties to the DMAs and had no contractual obligation to pay SCM's management fees. The DMAs merely provide that the Third Party Entities would use their best efforts to try to obtain payment from the Debtors, but such a provision does not create a legal obligation on the Debtors' part to pay SCM. . . .

. . .

Therefore . . . the court determines that the Debtors were not parties to the DMAs, or any other written agreements, requiring them to pay the management fees of SCM.

August 30, 2016 Oral Ruling ("Oral Ruling"), which is attached to and incorporated in

the First Declaratory Relief Order [Dkt. 378 and Ex. 8 to Motion RJN], at 6-9.[1]  SCM has

also claimed that it was entitled to be paid the Management Fees by the Debtor based

on an implied agreement or understanding with the Debtor. However, the Court has

ruled that the DMA's existence precludes SCM from receiving management fees from

the Debtor based on "an oral or implied contract or a theory of unjust enrichment,

quantum meruit, or another similar 'equitable' theory," explaining that

> There cannot be a valid express contract and an implied contract, each embracing the same subject, but compelling different results. *Eisenberg v. Alameda Newspapers, Inc.,* 88 Cal. Rptr. 2d 802, 824 (Cal. Ct. App. 1st Dist. 1999). Where there is an express contract governing the rights of parties, even where the party alleged to be benefited is not a party to the contract, as a matter of law there cannot be an implied contract. *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,* 94 Cal. App. 4th 151, 169 (2001).  As such, in light of the DMAs, SCM does not have a claim for management fees from the Debtors based on oral or implied contracts.
> As a matter of law, any benefit conferred to a third party by the performance of a party's contractual duties to its counter party do not support a claim for unjust enrichment . . .
>  . . . .
> [T]o the extent the [Non-Contract] Debtors benefitted from SCM's services, such benefit does not entitle SCM to recover from the [Non-Contract] Debtors. SCM provided services to the [Non-Contract] Debtors pursuant to its contractual duties with the Third Party Entities under the DMAs. *California Medical* makes clear that

---

[1] The Oral Ruling refers to Debtors in the plural as the Declaratory Relief MSA was made in multiple adversary proceedings.

since SCM acted in performance of its own duty pursuant to the terms of the DMA, any benefit conferred on the [Non-Contract] Debtors does not constitute unjust enrichment.

Oral Ruling at 16-17.

The Court's findings operate as law of the case, and cannot be reconsidered.

SCM's knowledge of the circumstances giving rise to the Debtor's unjust enrichment claim is a second basis for finding SCM's retention of the Management Fees to be unjust. SCM knew or should have known that the Debtor was not responsible for paying for SCM's management fees. Bruce Cook, general counsel for SCM, submitted a declaration showing his knowledge of the relevant provisions of the DMA. [Ex. 6 to Motion RJN at 27, ¶10]

As SCM has received $9,163,489 in Management Fees from the Debtor and it would be unjust for SCM to retain these funds, SCM must restore the $9,163,489 to the Trustee.

## OPPOSITION

The Debtor was obligated to pay SCM

While the Debtor did not have a contractual obligation to pay SCM directly, it did have the obligation to be the source of the payments to SCM.  Over the course of years, the Debtor directly paid SCM for the extraordinary amount of work that SCM performed on the Debtor's Marblehead Project, including grading, construction of a bridge and exterior roads, and establishment of a migration habitat. By requesting that this money be refunded, the Trustee is requesting that the Debtor receive SCM's work for free, which is unjust.

The Motion conveniently leaves out the provision of the DMA that establishes

that the Debtor was the source of the payments to SCM.

> [SCM] acknowledges and agrees that actual payment of the Management Fee
> may be deferred or delayed because funds are not available from the [Debtor] or
> other sources to pay the Management Fee on a current basis.  SCC JV Ventures
> agrees to use its best efforts to obtain funds from the [Debtor] or other sources in
> order to pay the Management Fee in accordance with the payment schedule set
> forth above; however, to the extent that funds are not available from the [Debtor]
> or other sources to pay the Management Fee in accordance with the foregoing
> schedule, any such shortfall in the payment of the Management Fee shall be
> deferred until such time as funds are available from the Project Loans or other
> sources to make payments of the Management Fee in accordance with the
> foregoing provisions.

DMA §5.1.  The DMA does not provide that SCM cannot seek payment from the Debtor

or that it would be unjust for SCM to retain such payments.

It should be noted that the DMA was a starting point, but - as set forth in the

Grandparent Operating Agreement - a business plan and the "Project Budgets"

memorialized periodic agreements of the Debtor, Lehman, and SCM regarding every

project expense.  SCM was only paid after Lehman agreed to a Project Budget and

approved the relevant draw request.

The testimony from knowledgeable persons at each of the Debtor, Lehman, and

SCM is unanimous that the stakeholders agreed and approved that the Debtor would

pay SCM.  [The Opposition then quotes from the declarations of Bruce Cook, the

general counsel of SCM and SCC JV Ventures and the preparer of the DMA), Bruce

Elieff (manager and owner of SCM and president of the Debtor), Danielle Harrison

(asset manager at SCM and former employee of Lehman's agent Trimont), Thomas

Rollins (Chief Accounting Officer for SCM), Frank Cappello (former VP at Lehman), and

Brad Lebovitz (former head of North American Asset management for three Lehman

funds).]  This testimony repeatedly states that

- Payments to SCM were envisioned/agreed to come from the Debtor and project loans to the Debtor.

- Lehman approved the Project Budgets and draw requests and the Debtor paid SCM directly without duress pursuant to these requests.

- The Debtor and Lehman never objected to direct payment to SCM by the Debtor.

- No agreement prohibited the Debtor from paying SCM directly or required SCM to return these funds.

The Debtor's agreement to pay its development costs, including SCM's fees, is also evidenced by:

- §6.7.11 and §2.3.3(f) of the Debtor's loan agreements with Lehman (the "Loan Agreements") requiring the Debtor to pay all development costs including the Management Fees,

- Recital A and §5.1 of the DMA providing that the Debtor as Project Owner was the source of funds to be used for SCM's Management Fees,

- §3.1 of the DMA providing that the Project Budgets were supreme,

- §5.3 and Ex. A (s)&(i) of the Grandparent Operating Agreement requiring (i) the payment of management fees and delegating development management responsibilities and (ii) a contract between the Debtor and a development manager,

- Various provisions of the Grandparent Operating Agreement confirming the Project Budgets as the basis for the parties' dealings,

- Draw requests requesting funds from the Debtor to use to pay SCM,

- Bank statements and checks showing such payments,

- Project Budgets, which became the basis of the parties' dealings, and

- The Trustee's admissions – in discovery, deposition, and a declaration - that the Debtor was obligated to pay the Management Fees to SCM.

In contrast, there is no evidence that SCC JV Ventures ever paid SCM directly. From the complex, evolving relationship, it is impossible to conclude that it is unjust for the Debtor to pay SCM for the development of its own Project. The relief requested by this motion would rewrite the parties' relationship.

Numerous decisions in fraudulent transfer law (which the Restatement notes is "obviously based on principles of unjust enrichment and associated equitable remedies") in analogous fact circumstances show that courts are not constrained by the form of a transaction and look to the net effect – whether the debtor received value. Just like those cases, the Debtor received value from SCM in SCM's development work on the Marblehead Project.

In interpreting the parties' relationship, the Court should be guided by the following principles:

- The intent of the parties is king.

- The Court should evaluate all related agreements regarding substantially the same transaction together, whether or not executed simultaneously or between the same parties.

- Course of performance is the best and most reliable evidence of the parties' intent, not only to interpret an ambiguity, but to reveal an ambiguity in language otherwise thought clear or to supplement or qualify terms, or to show waiver or modification.

The Trustee argues that the DMA clause requiring that modifications be in writing bars this evidence of the parties' conduct.  However, this argument has no support in the law

– even for an integrated contract, but more so for the DMA, which is not integrated even between the signatories SCC JV Ventures and SCM.  Course of performance in this case demonstrates that the Debtor agreed that the Debtor would pay SCM.

No unjust enrichment cause of action

There is no cause of action for unjust enrichment in California.  Further, a plaintiff may recover for unjust enrichment only where there is no contractual relationship between the parties, including a third-party beneficiary relationship.  Here, the Debtor's claim is nullified by the existence of the DMA, whether the Debtor is viewed as a direct contracting party or as a third-party beneficiary.

Defenses

The voluntary payment doctrine also bars recovery of this money, which was voluntarily paid with knowledge of the facts. SCM performed work for the Management Fees and the Debtor received the benefit of that work and -- as all the parties understood -- was ultimately responsible for paying the Management Fees.  The Debtor received the exchange that it expected.

The Debtor paid SCM without objection from 2005 – 2008.  Equitable estoppel and laches bar the Debtor from asserting that it is unjust for SCM to retain these payments.

Equitable estoppel requires (i) the party to be estopped to know the facts and intend for its conduct to be acted upon or act in a manner that the other party has the right to believe it so intended and (ii) the party asserting estoppel be ignorant of the true facts and rely on the conduct to its detriment. The Debtor knew it was paying SCM and

never objected.  It also knew SCM would accept these payments.  SCM was ignorant to the extent that the Debtor believed the payments were unjust and would later seek their return.

Laches requires (i) unreasonable delay in filing suit, based on when the claimant knew or should have known of the allegedly infringing conduct, and (ii) prejudice to the defendant. SCM relied to its detriment on the Debtor's conduct while the Debtor unreasonably waited seven years, until May 2012, to assert a claim for restitution.  SCM accepted the payments and did not demand that they come from SCC JV Ventures.  Had the Debtor objected in 2005, SCC JV Ventures could have paid SCM.  Now the Debtor lacks the funds to pay SCC JV Ventures, who thus lacks the funds to pay SCM.

The Trustee's claim for restitution is also time-barred, whether a two-year statute for obligations not based on a written instrument (Cal. Civ. Proc. Code §339), a three-year statute for fraud or mistake (Cal. Civ. Proc. Code §338), or a four-year statute for written contracts (Cal. Civ. Proc. Code §337).  All payments were made prior to May 2008.

*Res judicata* bars this claim.  The Court allowed SCM's claims seeking additional Management Fees under the same relationship that gave rise to the already-paid Management Fees that the Trustee now seeks to recover.

Prior Findings

The Declaratory Relief Orders do not render SCM's retention of the Management Fees unjust.  The Trustee relies on ambiguous language that "the DMA's existence precluded and precludes SCM from receiving management fees from the Debtor under

applicable law based on an oral or implied contract or a theory of unjust enrichment …

or another similar 'equitable' theory.

Interpretation of ambiguous orders follows the same rules used to interpret other

legal documents.  Courts should consider the entire relevant legal record and adopt a

construction that is consistent with the law and reasonable in light of the facts.

Ambiguity is construed against the drafter, in this case the Trustee.

Under these principles, the Declaratory Relief Orders mean only that SCM could

not have legally forced the Debtor to pay the Management Fees directly to SCM.  They

do not necessarily mean that it would be unjust for SCM to retain the Management Fees

that had already been paid.

Furthermore, the Declaratory Relief Orders should be narrowly construed.  Both

the Court and the Trustee have stated that the relief sought and the relief given in the

Declaratory Relief Orders do "not provide that the Debtor was precluded from paying

management fees to SCM under *any conceivable theory* or as a *gift* or that it was '*illegal*

*for SCM to be paid by the Debtor.*'"  October 20, 2016 Tentative Ruling [Ex. 63 to

Gustafson Dec.] at 42 of 88 (emphasis in the original)(quoting Trustee's Reply [Ex. 61 to

Gustafson Dec.] at 1:10-13).


**REPLY**

The Defendants' "factual background" is lifted virtually verbatim from the factual

background in their unsuccessful opposition to the Trustee's Declaratory Relief MSA.

The Court necessarily considered and rejected that background in granting the

Declaratory Relief MSA and entering the Declaratory Relief Orders. Issues that a court

determines during pre-trial motions become law of the case.  Law of the case doctrine

prevents the court from reconsidering that issue. *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004)("The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved."), *cert. denied*, 543 U.S. 980 (2004).

Unjust enrichment/restitution is a viable claim under California law.

Contrary to the Defendants' assertions, unjust enrichment/restitution claims are available even where there is a contractual relationship between the parties. This argument may be irrelevant because the Court has already ruled that the Debtor is not a party to any written agreement requiring it to pay management fees to SCM and is not otherwise contractually obligated to do so. The Defendants' assertion that this principle also applies to third-party beneficiaries (which the Court has found the Debtor to be) is not supported by the law.

This Court has already considered and rejected the Defendants' argument that the statute of limitations bars the Trustee's unjust enrichment/restitution claim. In their Rule 12(b)(6) Motion to Dismiss the First Amended Complaint in this action, the Defendants argued that the Trustee's unjust enrichment/restitution claim was barred by the statute of limitations. [Dkt. 64] The Court rejected that argument except as to expense reimbursement payments made to SCM prior to May 2008 (which are no longer at issue in this proceeding). [RJN Ex. 5, p. 1 ¶3] In any event, the Court entered an order extending and tolling the statute of limitations established by §546(a) – which governs actions brought under §544(a) - against SCM until June 1, 2012. [RJN Ex. 2 p. 2:17-3:4] Under §544(a), the Trustee is granted all rights and powers of a judicial lien creditor, which includes the right to pursue choses in action belonging to the debtor, such as breach of fiduciary duty and other state law claims.

The Defendants do not directly address the Trustee's assertion that it is unjust for a party to retain a benefit where there is no legal basis for that party's enrichment.  They return to their "law governing the interpretation of relationships" doctrine, *i.e.,* that the words and actions of the parties demonstrated agreement that the Debtor would pay SCM for the work done on the Marblehead Project.  But the Court expressly rejected this argument in the Declaratory Relief Orders and supporting Oral Ruling. [Ex. 8 to Motion RJN [Dkt. 378] Ex. A at 8, 14, 16] These findings are law of the case and not subject to reconsideration. Thus, the Court must reject express or implied contract or an equitable theory as the legal basis for SCM's retention of payments from the Debtor.

The Defendants do not dispute that is it unjust for a party to retain a benefit where they know the circumstances giving rise to the unjust enrichment claim.  Instead they claim (in a footnote), that SCM had no notice that the Debtor found its direct payments to be unjust in any way.  This argument is absurd, as the Debtor had no employees and SCM processed the payments for the Debtor.  It is also irrelevant as SCM's general counsel prepared the DMA and knew that SCC JV Ventures, not the Debtor, was responsible for the payments.

The Defendants' voluntary payment doctrine argument - that the Debtor voluntarily made the payments and got the exchange it expected - is inconsistent with the facts that the Debtor had no employees and these payments were actually made by SCM.  Lehman, the majority owner of the Debtor's grandparent, did not consent to the Debtor's payments to SCM. [June 10, 2015 Deposition of Frank Cappello, Ex. A to Dec. of Kiara Gebhart at 10:3-8] Lehman also moved to disallow SCM's claim for Management Fees in the bankruptcy case on the grounds that the Debtor was not a party to the DMA and SCC JV Ventures was obligated to pay the fees. [Ex. 1 to Reply

RJN at 11-12, 17-27].  While the Defendants rely on Tom Rollins' statement that Lehman knew of all of the Management Fees that were disbursed by the Debtors to SCM and affirmatively approved their disbursement, Mr. Rollins' testimony indicates that, when Lehman only partially funded draw requests, it did not indicate which invoices were to be paid and which were not.  Mr. Rollins and his staff never contacted Lehman to clarify which invoices to pay.

The fraudulent transfer cases cited by the Defendants – to the effect that courts may ignore the form of transactions and should look at the net effect on the debtor – are not relevant to an unjust enrichment/restitution claim, which requires only "receipt of a benefit" and "unjust retention of the benefit."

The Court should ignore the Defendants' "straw man" arguments regarding the Declaratory Relief Orders.  First, the Trustee does not, as the Defendants assert, rely completely on the Declaratory Relief Orders.  The Court's findings in these orders are part, but not all, of the argument for relief in this motion. This is one of several mischaracterizations of the Trustee's arguments made in the Opposition. Second, the Declaratory Relief Orders are not ambiguous, and the Court specifically rejected the Defendants' contention that the First Declaratory Relief Order was ambiguous at the hearing on the Trustee's Motion to Correct. [Transcript of October 20, 2016 hearing, which is attached to Reply Declaration of Gary Pemberton as Ex. B] The Defendants' Opposition mischaracterizes the Declaratory Relief Orders as intended to mean only that the Debtor had no affirmative legal obligation to pay SCM, but they cite no language in support of this interpretation.

The Court's holding in *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172 (Cal. Ct. App. 4th Dist. 2001), precludes the Defendants'

equitable estoppel defense.  *California Medical* held: "When parties have an actual

contract covering a subject, a court cannot - not even under the guise of equity

jurisprudence - substitute the court's own concepts of fairness regarding that subject in

place of the parties' own contract." 94 Cal. App. 4th at 172.  For this reason, both this

Court and the District Court rejected SCM's assertion that the "equities" should factor in

the Court's decision in the SunCal Century City case. [Reply RJN Exs. 3 and 4]  The

Defendants' argument that *California Medical* is limited to the context of claims is

without merit. Likewise, *Comet Theater Enters. V. Cartwright*, 195 F.2d 80 (9th Cir.

1952), does not support a general rule (asserted by the Defendants) that California

courts distinguish between making a claim and seeking the return of monies voluntarily

paid.

  The Defendants' laches argument, premised on the fact that the Debtor "knew it

was paying SCM directly, did so voluntarily, and never objected" and that "SCM relied

on the Debtor's conduct to its prejudice" is also untenable.  Being without employees,

the Debtor cannot be said to "voluntarily" or "knowingly" make payments.  SCM made

these payments on the Debtor's behalf.

  The Court has already rejected the Defendants' *res judicata* arguments: on May

12, 2016 the Court denied SCM's motion for summary judgment that was based on the

argument that *res judicata* bars the Trustee's claims. [Ex. 6 to Reply RJN at 2:12-13]  It

subsequently denied SCM's motion for reconsideration. [Ex. 8 to Reply RJN at 2:15-16]

Law of the case precludes the Defendants from relitigating this issue and it is

unfortunate that they have wasted the time of the Court and the Trustee by raising this

issue without even mentioning this procedural history.

Contrary to the Defendants' assertion, the Trustee does not seek partial

summary adjudication as to Argent.  This language of this motion is limited to SCM.

## **LEGAL STANDARDS**

Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show

that there is "no genuine dispute as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which

may affect the outcome of the proceedings.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). A factual dispute is genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Id.* The party moving for

summary judgment bears the burden of identifying those portions of the pleadings,

discovery, and affidavits that demonstrate the absence of a genuine issue of a material

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The facts must be viewed in

the light most favorable to the party opposing the motion.  *Anderson*, 477 U.S. at 249;

*Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991).

Unjust Enrichment/Restitution Cause of Action

A claim based on unjust enrichment – whether titled unjust enrichment or

restitution – may be brought under California law.

Some California courts allow a plaintiff to state a cause of action for unjust
enrichment, while others have maintained that California has no such cause of
action. *Compare Prakashpalan*, 223 Cal.App.4th at 1132, 167 Cal.Rptr.3d 832
(allowing plaintiffs to state a cause of action for unjust enrichment) with *Durell v.
Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010)
("There is no cause of action in California for unjust enrichment.") (internal
quotation marks and citation omitted). While California case law appears
unsettled on the availability of such a cause of action, this Circuit has construed

> the common law to allow an unjust enrichment cause of action through quasi-contract. *See Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.' ") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal.App.4th 221, 231, 166 Cal.Rptr.3d 864 (2014)). We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

Unjust enrichment under California law requires "receipt of a benefit and unjust retention of the benefit at the expense of another." *Hirsch v. Bank of Am.,* 107 Cal. App. 4th 708, 717 (Cal. Ct. App. 1st Dist. 2003) (quoting *Lectrodryer v. SeoulBank,* 77 Cal. App. 4th 723 (Cal. Ct. App. 2nd Dist. 2000)). "[R]elief is available under this theory upon a determination that under the circumstances and as between the two individuals, it is unjust for the person receiving the benefit to retain it. (Rest., Restitution, § 1, com. c, p. 13) . . . ." *Id.* at 722.

The California Supreme Court's statement of the law of restitution indicates that retention of a windfall (i.e., a benefit conferred on a party who had no legal right to that benefit) is unjust.

> Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. (Rest., Restitution, § 1, p. 12.) A person is enriched if he receives a benefit at another's expense. (Id., com. a, p. 12.) The term "benefit" "denotes any form of advantage." (*Id., com. b, p. 12.) . . . . Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (*Id., com. c, p. 13.)
>
> Thus, a party who does not know about another's mistake, and has no reason to suspect it, may not be required to give up the benefit if he or she also relied on it to his or her detriment. . . .
>
> In other circumstances, however, the party benefiting from a mistake of fact may be not be [sic] entitled to retain what amounts to a mere windfall. Thus, in *First Nationwide Savings v. Perry* (1992) 11 Cal. App. 4th 1657, 15 Cal. Rptr .2d 173, the Court of Appeal considered whether a beneficiary could recover for unjust enrichment from a nonassuming grantee of a purchase money deed of trust after the trustee mistakenly reconveyed the deed of trust and the grantee

sold the property, thereby obtaining all the proceeds from the sale. (*Id.* at p. 1660, 15 Cal. Rptr. 2d 173.) The Court of Appeal concluded that a cause of action for unjust enrichment could be stated if the beneficiary amended its complaint to allege that the grantee knew, or should have known, that the deed of trust was mistakenly reconveyed and that it was not entitled to all the proceeds of the sale. It reasoned that restitution may be required when the person benefiting from another's mistake knew about the mistake and the circumstances surrounding the unjust enrichment. (*Id.* at p. 1664, 15 Cal. Rptr. 2d 173.) "In other words, innocent recipients may be treated differently than those persons who acquire a benefit with knowledge." (*Ibid.*)

*Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (Cal. 1996); *see also Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (Cal. 2001)(insurance company may seek reimbursement from insured for defense costs allocated to non-covered claims; insured was unjustly enriched by insurer bearing non-bargained for costs); *Supervalu, Inc. v. Wexford Underwriting Managers*, 175 Cal. App. 4th 64, 78 (Cal. Ct. App. 2nd Dist. 2009)(" '[a]s a general rule, equitable concepts of unjust enrichment dictate that when a payment is made based upon a mistake of fact, the payor is entitled to restitution unless the payee has, in reliance on the payment, materially changed its position' ").

## **ANALYSIS**

I.  **The Trustee has shown as a matter of undisputed fact that SCM received a benefit from the Debtor: the payment of $9 million of Management Fees**

   There is no issue that SCM received a benefit from the Debtor in the form of payments of $9,163,489 for Management Fees. [UF 15, which is not disputed]

II. **The Trustee has shown as a matter of undisputed fact that SCM's retention of the Management Fees was unjust**

   A. **In the Declaratory Relief Orders, the Court found that SCM had no legal entitlement to receive Management Fees from the Debtor**

The Court (pursuant to rulings by Judge Smith, prior to the transfer of these proceedings to Judge Mund) has made the following findings in the Declaratory Relief Orders:

- The Debtor was not a party to any written agreement, including the Development Management Agreement, requiring it to pay management fees of SCM or otherwise contractually obligated at any time to pay management fees to SCM.

- The DMA's existence precluded and precludes SCM from receiving management fees from the Debtors under applicable law based on an oral or implied contract or a theory of unjust enrichment, quantum meruit or another similar 'equitable' theory.

Declaratory Relief Orders [Dkt. 378, 427 & Exs. 8, 10 to Motion RJN]. Taken as a whole, the Declaratory Relief Orders determined that SCM was not entitled to receive management fees from the Debtor under any written agreement, oral or implied contract, or theory of unjust enrichment, quantum meruit or another similar 'equitable' theory.

It is correct, as the Defendants argue, that the Court interpreted its Declaratory Relief Orders as stopping short of holding that "the Debtor was precluded from paying management fees to SCM under *any conceivable theory* . . . ."[2]   Thus, it is theoretically possible that SCM had a legal right to be paid Management Fees by the Debtor.  The Defendants have not, however, presented any such alternate theories.

B. <u>The Court will apply these findings from the Declaratory Relief Orders as law of the case</u>

---

[2] The Court also discussed the possibility of SCM receiving the Management Fees as a gift, which is considered in the Voluntary Payment Doctrine discussed below.

The parties in these cases have clearly contemplated that the Court's rulings granting summary judgment/adjudication would have some binding effect. Collectively, these twelve adversary proceedings are an unusually large and complicated piece of litigation. The parties have brought a number of motions for summary judgment and/or summary adjudication (and plan to bring quite a few more) in order to resolve issues and to narrow the scope of the litigation.

The Ninth Circuit has recently held that (i) law of the case does not require a court to follow rulings on pre-trial motions, such as the Declaratory Relief Orders, if it has reason not to and (ii) in any event rulings denying summary judgment/adjudication are never binding law of the case.

> [T]he denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing. Denial of summary judgment may result from a factual dispute at the time. That dispute may disappear as the record develops. . . .
>
> . . . .
>
> To the extent that *Scarsella Bros.* [931 F.2d 599 (9th Cir. 1991)] purported to hold that the law of the case doctrine bars district courts from reconsidering pretrial rulings, we overrule it. Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise. At the summary judgment stage, for example, trial courts ask only whether there could be a material issue of fact. They must draw all inferences in the non-movant's favor, *see Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986), and rest their rulings on the evidence that they think could be introduced at trial. But when considering whether to grant judgment as a matter of law, they look only at the evidence actually introduced at trial.
>
> It makes no sense to say that a ruling that the plaintiff could hypothetically prove some set of facts that would support his claim prevents a district court from later finding that the plaintiff had not, in fact, proven those facts. Nor to say that if a district court realizes an earlier ruling was mistaken, it can't correct it, but must instead wait to be reversed on appeal. All that would do is waste both the courts' and litigants' time and resources. Thus, Wright and Miller have observed that, although "[i]t is proper [for a district judge] to refuse to reconsider a summary judgment ruling[,] ... [d]enial of summary judgment often is reconsidered." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.1 (2002). "Denial can easily be followed," as it was here, "by judgment as a matter of law or dismissal after trial." *Id.*

*Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 946 (2015).

Considering both *Peralta* and the parties' use of motions for summary judgment/adjudication to narrow the scope of litigation, the Court will treat rulings granting summary judgment/adjudication as binding law of the case, unless the Court is presented with good reason not to follow that prior ruling. This reason can be in the form of changes in law, legal or factual errors, or further factual developments. The Defendants have not cited any changes in law, errors, or factual developments that would give the Court reason not to follow the findings in the Declaratory Relief Orders.

The Defendants argue that these findings are nonetheless not relevant to this motion, because the Court intended these findings to be limited to the issue of SCM's claim against the Debtor's estate and not applied to the Trustee's action to recover from SCM. In fact, Judge Smith quite clearly stated that her findings would be applied to the Trustee's unjust enrichment claim:

> While the Motion refers to the Trustee's declaratory relief claim, the findings requested by the Trustee are also relevant to the Trustee's breach of contract, unjust enrichment, restitution, and fraudulent transfer claims. Reply, pg. 11, lns 26-28. The court cannot make a determination on the Trustee's breach of contract, unjust enrichment, or restitution claims without first deciding whether the Debtors were contractually obligated to pay the management fees of SCM. As to the unjust enrichment and restitution claims, "[a]n individual is required to make restitution when he or she has been unjustly enriched at the expense of another. A person is enriched if he or she receives a benefit at another's expense. The term 'benefit' connotes any type of advantage." *Hirsch v. Bank of America,* 107 Cal. App. 4th 708, 721-22 (2003). The Trustee alleges that the Debtors were never contractually obligated to SCM to pay any management fee or expense, and any payments made by the Debtors to SCM in relation thereto were unjustified and must be returned to the Debtors' respective estates.

Oral Ruling [Ex. A to First Declaratory Relief Order [Dkt. 378 & Motion RJN Ex. 8]] at 5.[3]

---

[3] This Oral Ruling also undermines the bulk of the Defendants' argument in the Opposition: that the course of dealing and other contracts governing the Marblehead Project gave rise to an obligation by the Debtor to pay SCM. The Defendants had made this argument in their opposition to the Trustee's Declaratory Relief MSA and the Court

C. SCM's lack of legal entitlement establishes that its retention of the Management Fee payments is unjust

The findings in the Declaratory Relief Orders compel the conclusion that SCM had no legal entitlement to the payments of Management Fees it received from the Debtor: no written agreement or other contractual obligation; no oral or implied contract; and no theory of unjust enrichment, *quantum meruit*, or similar equitable theory.  The Defendants have presented no other theory giving SCM legal entitlement to receive Management Fees from the Debtor.

This lack of legal entitlement to the Management Fees satisfies *Ghirardo's* standard for "unjust."  Underlying the California Supreme Court's statement in *Ghirardo* is the idea that a benefit conferred (such as money paid) on a party who had no legal right to that benefit is unjust.[4] *Ghirardo* discusses benefit conferred by mistake (which may or may not be the reason for the Debtor's payment of the Management Fees to SCM), but the larger picture is the same: benefit conferred without legal entitlement to the benefit.  Under *Ghirardo*, as between the Debtor and SCM, it is unjust for SCM to retain the Management Fee payments.

---

roundly rejected it, both in the findings made in the Declaratory Relief Orders (as quoted above) and in the reasoning of the incorporated Oral Ruling:

- As such, there cannot be an implied contract based on any regular practice pursuant to the Project Budgets, draw requests, or invoices as section 5.1 of the DMAs expressly obligates the Third Party Entities to pay management fees to SCM with funds received from the Debtors.
- As such, the actions by the parties do not support a finding that the DMA's were rescinded, abandoned, and/or modified.

Oral Ruling at 7.

[4] The California Supreme Court in *Ghirardo* also stated an exception to this rule: if the defendant did not know it wasn't entitled to the payments, had no reason to suspect it wasn't so entitled, and relied on its receipt of the payments to its detriment, then its retention of the benefit would not be unjust and would not be subject to restitution. This exception does not protect SCM, however, as its general counsel drafted and signed the DMA. [UF 13, which is not disputed; Declaration of Bruce Cook ¶11]

Thus, the Trustee has established both elements of a claim for unjust enrichment under California law: benefit conferred and unjust retention.

III.  It nonetheless remains a matter of disputed fact whether SCM's receipt and retention of the Management Fee payments constitute actionable unjust enrichment under California law

Although the Trustee has established the elements of unjust enrichment, the Defendants have raised five legal doctrines that arguably prevent SCM's receipt and retention of the Management Fee payments from constituting actionable unjust enrichment under California law.  Three of these doctrines are not applicable, as a matter of undisputed fact, but the applicability of the final two doctrines raises genuine issues of fact that prevent this Court from granting summary judgment to the Trustee.

A.  Existence of a governing contract, "receipt of the exchange expected," and equitable principles from fraudulent transfer law are not applicable

Three of the Defendants' cited legal doctrines – the existence of a contract covering the same subject matter, the Debtor receiving the exchange it expected, and principles of equity from fraudulent transfer law - are not applicable to this case.

1.  Existence of a contract governing the rights of the parties

The Defendants argue that a plaintiff may not recover for unjust enrichment/restitution in the face of a valid contract governing the rights of parties.

> Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties. *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1272 (S.D.N.Y.1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.") (internal quotation marks omitted); *see*

*Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.*, 183 A.D. 2d 758, 583 N.Y.S.2d 497, 498 (App.Div.1992). *Accord Wal–Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613, 119 Cal. Rptr. 646 (Ct. App. 1975).

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1167 (9th Cir. 1996); *see also, e.g., Daniel v. Wayans*, 8 Cal. App. 5th 367, 399 (Cal. Ct. App. 2nd Dist. 2017), *review granted*, 393 P.3d 916 (Cal. May 10, 2017); *Rutherford Holdings v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Cal. Ct. App. 6th Dist. 2014).

In this case, there is no contract between the parties.

This Court has held that the Debtor is a third party beneficiary of the DMA [UF 19, which is undisputed] and the Defendants cite one case (from outside the Ninth Circuit) that ruled that the existence of a contract precluded an unjust enrichment claim by a third-party beneficiary of the contract. *Peterson v. Atradius Trade Credit Ins. (In re Lancelot Inv'rs Fund)*, 451 B.R. 833, 842 (Bankr. N.D. Ill. 2011).

However, even if this rule were applied to third party beneficiaries, the DMA does not bar this unjust enrichment/restitution claim because the DMA does not cover the same subject matter as this claim.  For a contract to preclude an unjust enrichment/restitution claim, the contract and the claim must cover the *same subject matter. See, e.g., Buss v. Superior Court*, 16 Cal. 4th 35, 49-50 (Cal. 1997); *California Med. Ass'n v. Aetna U.S. Healthcare,* 94 Cal. App. 4th 151, 172 (Cal. Ct. App. 4th Dist. 2001).

Courts in the Ninth Circuit have interpreted the "subject matter" requirement to allow unjust enrichment/restitution claims where the contract does not provide the specific recovery sought in restitution.  *See, e.g., Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.)*, 601 F. Supp. 2d 1201, 1220–1221 (S.D. Cal. 2009); *see also Yang v. Dar Al-Handash Consultants,* 250 Fed.

App'x 771, 773 (9th Cir. 2007)(unjust enrichment claim barred: "unjust enrichment claim

thus sought the same incentive payments governed by the [contracts]").   Another court

has stated the issue as "whether this action derives solely from the agreements

alleged." *Stitt v. Citibank*, 942 F. Supp. 2d 944, 960 (N.D. Cal. 2013).   A district court

explained why relief should turn on whether the contract provides the same remedy

sought in restitution:

> A contract normally bars an action for unjust enrichment because it
> precludes a finding that the plaintiff is without an adequate remedy at law—a
> party deprived of benefits due under a contract generally has the ability to
> enforce the contract. *See Burge v. Freelife Int'l, Inc.,* No. 09–CV–1159–PHX–JA,
> 2009 WL 3872343, at *4 (D. Ariz. Nov. 18, 2009) (explaining that the Brooks rule
> rests on the assumption that the contract provides an adequate legal remedy);
> *see also USLife Title Co. of Ariz. v. Gutkin,* 152 Ariz. 349, 732 P.2d 579, 585
> (Ariz.Ct.App.1986) (explaining that the Brooks rule exists to prevent plaintiff from
> obtaining "double recovery" in contract and restitution). Consistent with this
> rationale, Arizona courts permit a plaintiff to bring an unjust enrichment claim
> where her inability to enforce the contract leaves her without an adequate
> remedy at law. *See, e.g., Arnold*, 275 F. Supp. 2d at 1024–25 (restitution
> available where contract is unenforceable under the statute of frauds) (citing
> *Trollope v. Koerner*, 106 Ariz. 10, 470 P.2d 91 (1970)). Similarly, a plaintiff may
> bring an unjust enrichment claim where she asserts a right that is not subject to
> vindication in an action to enforce the contract. *See Ellis v. J.P. Morgan Chase &
> Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) (unjust enrichment claim not
> barred by contract unless it "derives from the subject matter of the agreement [
> ]"); *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601
> F.Supp.2d 1201, 1220–21 (S.D .Cal. 2009) (unjust enrichment claim would not
> be dismissed where contracts did not appear to provide for the specific recovery
> sought by plaintiff*) . . . .*

*Cheatham v. ADT Corp.,* 161 F. Supp. 3d 815, 833 (D. Ariz. 2016).

The Debtor's third-party beneficiary rights under the DMA do not include any right

to recover money from SCM. The DMA obliges SCM to develop the Project, and the

Debtor as third party beneficiary might have sued to enforce that contractual duty.  The

DMA did not require any payments by SCM, so the Debtor's restitution claim for the

return of the Management Fee paid to SCM is not (as the *Cheathem* court put it)

"subject to vindication in an action to enforce the contract."  Thus, the existence of the

DMA does not preclude the Trustee's unjust enrichment/restitution claim.[5]

### 2. "Receipt of Exchange Expected"

The Defendants argue that it is not unjust enrichment if the plaintiff receives the exchange it expected. They cite *Comet Theatre Enters. v. Cartwright*, 195 F.2d 80, 81 (9th Cir. 1952), where the Ninth Circuit refused recovery of money the plaintiff had paid to an unlicensed contractor for construction work, even though California law makes construction contracts with unlicensed contractors illegal and void and bars the unlicensed contractor from suing to enforce such contracts.  However, *Comet Theater* has typically been relied upon in the context of contracts made void by one party's unlicensed status.  For example,

> As a general rule, a party may not recover money paid to satisfy obligations in a void contract if "there is no proof that the services which were rendered to him were defective or that he in any other way did not receive value for the money which he paid." *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir.1952) . . . .

*State Farm Auto. Ins. Co. v. Newburg Chiropractic,* 741 F.3d 661, 665 (6th Cir. 2013)(plaintiff denied recovery of fees paid to unlicensed contractor).  Other cases cited by the Defendants have been in this context of an existing contract, whether enforceable or not. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1596 (Cal. Ct. App. 4th Dist. 2008)(no recovery of fees paid unlicensed insurer of cell phones: "they are not entitled to restitution because they received the benefit of the bargain"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 4th Dist. 2010)(statement made in the context of a ruling that "an unjust enrichment claim does not lie where the parties have an enforceable express contract").  The Defendants have not persuaded

---

[5] The SAC included a claim for breach of contract, but it was pled in the alternative, in the event that the Court would find that the Debtor had a contractual obligation to compensate SCM for Management Fees or Expenses.

the Court that this statement - that there is no unjust enrichment if the plaintiff received

the exchange that it expected - applies beyond cases where the parties have a contract

governing the issue.

### 3. Fraudulent transfer precedent

Finally, the fraudulent transfer case precedent cited extensively in the Opposition

is just that – fraudulent transfer case law.  It is not directly relevant to the specific

question of whether SCM's retention of the Debtor's payments is unjust for the purposes

of an unjust enrichment/restitution claim.

As these three doctrines are not applicable to this case as a matter of undisputed

fact, they do not change the conclusion that SCM's retention of the Management Fees

constitutes unjust enrichment under California law.

### B. "Voluntary Payment" and "Incidental Benefit" Doctrines may be applicable

The Defendants offered two more legal doctrines that, if applicable, would

prevent SCM's receipt and retention of the Management Fees payments from being

actionable unjust enrichment: the "voluntary payment" and "incidental benefit" doctrines.

### 1. Voluntary Payment Doctrine

The Defendants argue that the voluntary payment doctrine precludes the

Debtor's payment of management fees from being an unjust enrichment of SCM.

Unjust enrichment contemplates an involuntary or nonconsensual transfer, unjustly enriching one party. A defendant is not unjustly enriched and therefore not required to make restitution where the benefit was conferred by a volunteer. Thus, a person cannot use the courts to recover money voluntarily or consensually paid with full knowledge of all of the facts and without fraud, duress, or extortion in some form. This doctrine is often referred to as the "voluntary

payment doctrine" or the "volunteer rule" and is considered an exception to the principle of restitution. Thus, it is universally recognized that money voluntarily paid under a claim of right to payment and with knowledge of the facts by the person making the claim cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance.

66 Am. Jur. 2d *Restitution and Implied Contracts* § 92.

The voluntary payment doctrine applies under California law:
"The voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts." *Parino v. BidRack, Inc.,* 838 F.Supp.2d 900, 908–09 (N.D.Cal.2011) (citing *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal.App.2d 581, 586, 15 Cal. Rptr. 209 (1961)). "But it is elementary that an excessive payment made in ignorance of the fact that it is excessive is recoverable." *Am. Oil*, 194 Cal.App.2d at 586, 15 Cal. Rptr. 209.

*Rodman v. Safeway Inc.,* 125 F. Supp. 3d 922, 941 (N.D. Cal. 2015); *see also Ellsworth v. U.S. Bank*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012)("The voluntary payment doctrine is an affirmative defense . . . .").

The Trustee argues that, given that the Debtor had no employees and was managed by SCM, it cannot be said that payments were truly voluntary and the Debtor received the exchange that it expected.  However, the Court cannot accept this "no employees, no intent" argument.  Otherwise, the Debtor would lack responsibility for any action and would effectively cease to be a legal entity.

While the Debtor had no employees and SCM performed the Debtor's day-to-day functions [Defendants' Additional Facts ("AF") Nos. 9, 11; MSJ at 5:1], the Debtor did have members.  At the parent and grandparent level, these were various SunCal-related entities, but Lehman owned the majority of member interests in the Grandparent, (while SunCal entity SCC JV Ventures owned the remainder.) [AF Nos. 2, 3; MSJ at 2:11-14]   As a result, both parties have offered evidence on Lehman's knowledge of and consent to the payment of the Management Fees by the Debtor. [MSJ at 12:1-15 and evidence cited therein; Declaration of Danielle Harrison ¶¶ 5, 8-19;

Declaration of Bruce Cook ¶ 35; Declaration of Jeffrey Cook 3, 6-16; Declaration of Tom

Rollins ¶¶ 7-11, 13-14; Declaration of Bruce Elieff ¶ 37]  At the hearing on this motion,

the Defendants pointed to voluminous evidence that Lehman was aware of and

consented to the Debtor's payment of management fees.  The Trustee argued that the

Defendants had presented no evidence that Lehman knew of the DMA provision that

provided that the Grandparent - not the Debtor - was obligated to pay management fees

to SCM.

The Defendants have also shown that the Debtor had officers, such as Bruce

Elieff. Mr. Elieff's declaration states that he was the President of the Debtor and that he

monitored, participated in, or oversaw the participation of others in the negotiation,

execution and effectuation of agreements between SCM, Lehman, and the Debtor

[which presumably included the DMA].  [Elieff Dec. ¶ 7, 9]  Furthermore, Bruce Cook

was an authorized signatory for the Parent [*see, e.g.,* Debtor's LLC Agreement [Cook

Dec. ex. 2 [dkt. 440-6], which is signed by Cook on behalf of the parent] and Mr. Cook

drafted the DMA.

Thus, at the very least, it is a matter of disputed fact whether the Debtor knew

that it had no obligation to pay the management fees directly to SCM but consented to

such payment nonetheless.


2.  Incidental Benefit to the Debtor

Similarly, the Defendants argue that benefitting another in the performance of

one's own duties or in the improvement of one's property is not unjust enrichment, but

merely an incidental benefit, citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,

33

1371 (Cal. Ct. App. 2010), and *California Medical*, 94 Cal. App. 4th at 172–73.  As

*Durrell* stated:

> "If the money is paid in satisfaction of an obligation actually owed by the plaintiff,
> he or she is obviously not entitled to restitution even though the performance was
> induced by mistake or fraud." (1 Witkin, Summary of Cal. Law, *supra*, Contracts,
> § 1025, p. 1117.)

183 Cal. App. 4th at 1371.  *Durrell* is referring to obligations in a contract between the

parties (not obligations owed to a third party), and so, again, does not necessarily

extend beyond cases where the parties have a contract governing the issue.

*California Medical*, however, is not so easily distinguishable.

    The language of *California Medical* has been repeatedly cited by each side, so it

is important to consider the facts of the decision. The California Medical Association (as

the assignee of claims held by its member physicians (the "Physicians") sued certain

health care plan providers (the "Plan Providers"). The Physicians had contracted -

through certain intermediaries (the "Intermediaries") - to provide health care to enrollees

in the Plan Providers' plans and had agreed to look solely to the Intermediaries for

payment for such services.  The Intermediaries also contracted with the Plan Providers:

agreeing to provide health care services to the enrollees (through the Physicians) and

receiving payment for the services from the Plan Providers (payment which the parties

understood would be used to pay the Physicians).

    The lawsuit arose because the Plan Providers continued to pay the

Intermediaries for services rendered by the Physicians (as the contracts provided) even

though the Plan Providers knew that the Intermediaries were financially unstable.  The

Intermediaries' insolvency ultimately resulted in the Physicians not being paid for

numerous services provided to the enrollees.  The lawsuit, among other things,

asserted a quasi-contract claim to recover the value of the Physicians unpaid services

from the Plan Providers.

The *California Medical* court ruled that the CMA was not entitled to payments from the Plan Providers to cover services rendered by the Physicians under unjust enrichment because, among other reasons, any benefit conferred upon the Plan Provider by the Physicians was incidental to the Physicians' performance of their own obligations to the Intermediaries under the Intermediary-Physician Agreements.[6]  Other decisions have followed *California Medical* in this regard, holding that the plaintiff's performance of a duty to any party, not just a duty to the defendant, may make the defendant's enrichment incidental rather than unjust. *See Small Hill, LLC v. Kwiat*, 2005 WL 941381, at *10 (Cal. Ct. App. 2nd Dist. Apr. 25, 2005)("Any benefit to respondents was simply incident to Small Hill's own duty to remove the underground storage tanks."); *City of Los Angeles v. Bank of Am. Corp.,* 2014 WL 2770083, at *12 (C.D. Cal. June 12, 2014).

> It is even more obvious that, where the plaintiff acts in performance of his or her own duty or in protection or improvement of the plaintiff's own property, any incidental benefit conferred on the defendant is not unjust enrichment.

1 Witkin, Summary 10th Contracts § 1020 (2005). *But see Hartford Cas. Ins. Co. v. J.R. Mktg.*, 61 Cal. 4th 988, 1000 (Cal. 2015) (describing the incidental benefits principle

---

[6]  The *California Medical* decision cited other reasons for denying unjust enrichment relief, which are not applicable to this case.

It held that the express terms of the contracts governing payment among the parties precluded an action for unjust enrichment.  (It is here that the court quoted the California Supreme Court:

> "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." (Hedging Concepts, Inc., at p. 1420, 49 Cal.Rptr.2d 191.) Thus, CMA may not proceed on its quasi-contract claim because the subject matter of such claim, to wit, whether Physicians were entitled to compensation from defendants, was governed by express contracts . . .

94 Cal. App. 4th at 172–73.) In this case, there are no express contract terms barring or even covering the payments sought by the Trustee (as set forth above).

It also held that the Physicians were strangers to the Plan Provider-Intermediary Agreements and the Plan Provider-Enrollee Agreements, and so could not use unjust enrichment to affirm or void any portion of those contracts.  In this case, the Court has previously found that the Trustee is a third-party beneficiary to the DMA.

from *California Medical* in more limited terms).

Like *California Medical*, the parties in this case do not have contractual obligations to one another, but they do have payment and performance obligations to third parties.[7] The Defendants have presented evidence that the Debtor was obligated to pay all development costs for the Project, under a series of loan agreements with Lehman.  [Loan Agreements of June 10, 2005, July 27, 2006, and October 3, 2007 [Exs. 6, 7 & 8 to Cook Dec.] §2.3.3(f), §6.7.11(b)].   However, the DMA contemplated that these payments would be made through SCC JV Ventures, not directly by the Debtor. [DMA §5.1])  Furthermore, it is undisputed that the Management Fees were paid to SCM for its work on the Project, which was the Debtor's property. Thus, it is at the very least a matter of disputed fact that (i) the Debtor had an obligation - not to SCM, but to another party - to pay the Management Fees and (ii) the Management Fees paid for services rendered in the improvement of the Debtor's property.  Such duties or improvements in the Debtor's property would mean that the benefit to SCM was incidental and not unjust enrichment under California law.


There are genuine issues of material fact as to whether one or both of these legal doctrines – the voluntary payment doctrine and the incidental benefit doctrine - are applicable to this case.  The potential applicability of these doctrines prevents the Court from granting summary judgment to the Trustee.

---

[7]  In each case the "Payors" and the "Service Providers" had no direct contractual obligations to one another, but had obligations to other parties. The cases differ because the Debtor paid SCM directly, while the Plan Providers refused to pay the Physicians directly and paid the Intermediaries (consistent with their contractual obligations). So, in *California Medical*, the Service Providers were seeking to compel the Payors to make payments to them;  in this case the Payor is seeking the return of payments it had made to the Service Provider.  As a result, the reasons for denying relief in California Medical were reasons why the Service Providers had no legal entitlement to be paid directly by the Payors – a conclusion that in some ways cuts against SCM and that in any event has already been decided in the Declaratory Relief Orders.  Despite this reversal of roles, the "incidental benefit" principle of *California Medical* remains applicable to this case.

IV. Affirmative Defenses

The Defendants argue that the statute of limitations, equitable estoppel, laches, and *res judicata* bar the Trustee's unjust enrichment/restitution claim.  These are all affirmative defenses, enumerated in Fed. R. Civ. P. 8(c)(which is applicable pursuant to Fed. R. Bankr. P. 7008), and the Defendants, as the parties asserting the defense, accordingly carry the burden of proof for each of these defenses.  *See, e.g., Payan v. Aramark Mgmt. Servs. Ltd.,* 495 F.3d 1119, 1122 (9th Cir. 2007)*(*"Payan is correct that because the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."); *Tovar v. U.S.P.S.,* 3 F.3d 1271, 1284 (9th Cir.1993) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense."); *Howard v. Green*, 555 F.2d 178, 181 (8th Cir. 1977)("*Res judicata* is of course an affirmative defense, Fed. R. Civ. P. 8(c), and the burden of proof is upon the party asserting it.")

A.  Equitable estoppel and *res judicata*

These defenses do not, as a matter of undisputed fact, bar the Trustee's unjust enrichment claim.

1.  Res Judicata

The Defendants argue that the Court's allowance of their claims for additional, unpaid Management Fees bars the Trustee's claims in this proceeding for the return of Management Fees already paid.

This Court has previously rejected this *res judicata* argument by SCM when it denied SCM's motion for summary judgment that was based on *res judicata* (and subsequently denied SCM's motion for reconsideration of that ruling). [Dkt. 289, 417 & Reply RJN Exs. 6, 8]  As the Court stated in its tentative ruling that was incorporated in the order denying SCM's Motion for Summary Judgment: "SCM has failed to meet its burden that the merits of each claim alleged in the SAC was previously decided by the Plans, Confirmation Orders, and/or the allowance of the Claims."  [Dkt. 285 at 21] SCM has not offered any additional evidence on this point, relying on the same allowance of its claims, pursuant to a court-approved stipulation, the Trustee and Lehman's withdrawal of their objections, the Plan, and the Confirmation Order.

This ruling is not binding on this Court.  As discussed above, under *Peralta* a denial of a motion for summary judgment and/or adjudication, such as Judge Smith's ruling on *res judicata*, is not binding law of the case.

However, the Court finds Judge Smith's thorough analysis of the *res judicata* issue [dkt. 285 at 921] persuasive on this point.  Judge Smith also found it persuasive and relied upon it in her subsequent ruling *granting the Trustee's Motion for Summary Adjudication* [dkt. 378 at 8 (ex. A at 18)].  In fact, the Defendants have not introduced any evidence or argument on this issue to change the Court's conclusions that (i) the merits of these claims were not previously decided by the Plans, Confirmation Orders and/or allowance of the claims and (ii) the claims were reserved pursuant to the Plans. While the Defendants argue that the burden of proof has shifted, they have not pointed to any facts that controvert the facts relied upon in Judge Smith's ruling.

2. Equitable Estoppel

The elements of equitable estoppel are "(1) the party to be estopped must be

1
2
3
4
5

    apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (*Strong v. County of Santa Cruz* (1975) 15 Cal. 3d 720, 725, 125. 896, 543 P. 2d 264.) The detrimental reliance must be reasonable. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35, 44 Cal. Rptr. 2d 370, 900 P.2d 619; *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal. App .4th 263, 271–272, 152 Cal. Rptr. 3d 518.)

6
7

*Schafer v. City of Los Angeles*, 237 Cal. App. 4th 1250, 1261 (Cal. Ct. App. 2nd Dist.

8
9

2015), *review withdrawn* (Aug. 26, 2015).  Given that the Debtor had no employees and

SCM acted for the Debtor in making these payments to SCM, it is impossible to

10
11

conclude that the Debtor had some knowledge of facts that SCM lacked or that the

Debtor acted to induce SCM to act to its detriment.

12
13

    Thus, neither *res judicata* nor equitable estoppel are applicable to bar the

14

Trustee's unjust enrichment claim.

15
16

B.  Laches and Statute of Limitations

17

    However, it remains an issue of disputed fact whether the affirmative defenses of

18
19

statute of limitations or laches bars the Trustee's unjust enrichment claim.

20
21

    1.  Laches

22
23
24
25

    A defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted. (*Miller v. Glenn Miller Productions, Inc.* (9th Cir.2006) 454 F.3d 975, 997; *Jarrow Formulas, supra*, 304 F.3d at pp. 835, 838; *Kason Industries, Inc. v. Component Hardware Group, Inc., supra*, 120 F.3d at p. 1203.)

26
27

*Magic Kitchen v. Good Things Int'l,* 153 Cal. App. 4th 1144, 1157 (Cal. Ct. App. 2nd Dist.

28

2007). The Debtor paid the fees and expenses from 2005 until 2008, but this lawsuit

was not commenced until 2012. This was clearly a delay.

The delay from late 2008 until 2012 does not appear to have prejudiced SCM. Given the shut-down of the Marblehead Project, the bankruptcy of Lehman and Lehman's decision not to further fund the Project, the absence of any available funds, and the automatic stay arising from the Debtor's November 2008 chapter 11 case, there was nothing that SCM did or could have done. It did not receive further payments, or perform work. It could not have pursued the Debtor for payments, except through filing a proof of claim. Seeking to compel SCC JV Ventures to pay the Management Fees that the Debtor "wrongfully" paid would be fruitless because the documents provide that the money that SCC JV Ventures would use to pay the Management Fees would come from Lehman through the Debtor

On the other hand, the delay from 2005 until the Debtor's November 2008 petition date did prejudice SCM. Had the Debtor asserted that the Management Fees were not its direct responsibility, refused to pay, and demanded the return of payments already made prior to November 2008, SCM could have properly requested payment from SCC JV Ventures (which then could have sought payment from the Debtor).

Thus, the issue is whether that delay from 2005 to the 2008 petition date was reasonable or excusable. The Trustee has argued that, without its own employees, the Debtor lacked the ability to "knowingly" or "voluntarily" do anything.  As discussed above, the Trustee's "no employees, no intent" argument is not well-taken.  The Trustee also argued that the Defendants have presented no evidence that the delay was unreasonable.  However, this three-year delay in asserting the Debtor's contractual rights is unreasonable on its face, unless the Trustee can present reason or excuse for the delay.  The question of whether the delay from 2005 to 2008 is reasonable or excusable is an issue for trial.

2. <u>Statute of Limitations</u>

1. <u>The FAC Dismissal Order</u>

The Trustee is correct that the Defendants' have already raised a statute of limitations defense in their motion to dismiss the FAC and the Court has ruled that the statute of limitations is not a bar to the unjust enrichment/restitution claim seeking (i) Management Fees and (ii) expenses paid in or after May 2008. [Order Partially Granting Defendants Motion to Dismiss ("FAC Dismissal Order"; Dkt. 90 & Reply RJN Ex. 5)] However, as discussed above, the law of the case doctrine does not require that the Court follow a decision made by the Court at the motion to dismiss stage of the proceedings. However, the Court may elect to follow such rulings if relevant and persuasive.

The FAC Dismissal Order concluded that the statute of limitations was four years (apparently in response to the Trustee's argument that the underlying cause of action is based on the Debtor's third-party beneficiary status under the DMA [Opposition to Motion to Dismiss ("Opposition"; Dkt. 75) at 19-20]), so the four-year statute of limitations under Cal. Civ. Proc. Code §337 for written contracts applied. The FAC Dismissal Order then dismissed the Trustee's unjust enrichment/restitution action for expenses paid before May 2008 only, allowing the remainder of the Trustee's unjust enrichment/restitution claim to proceed. The Trustee had argued that the Management Fees did not become subject to restitution until the Marblehead Project was transferred to Lehman in March 2012 [Opposition at 17, 20]; the Court appears to have accepted this argument, given its ruling that all claims for Management Fees were timely. The Trustee had also argued that the "adverse domination doctrine" tolled the statute of

1
2
limitations [Opposition at 18-19], but doesn't appear to have won that argument, given

the dismissal of the claim for pre-May 2008 expenses.

3
4
        The Court will not follow this statute of limitations ruling from the FAC Dismissal

5
Order.  As discussed above, the Ninth Circuit in *Peralta* has held that pre-trial rulings

6
are not binding as law of the case. The rationale for this holding is even stronger for

7
motions to dismiss (as opposed to the motions for summary judgment at issue in

8
*Peralta*): motions to dismiss test allegations rather than evidence. Furthermore, the FAC

9
10
Dismissal Order is not persuasive because it does not provide analysis in support of its

11
conclusions and the Court's reasoning can only be presumed from the arguments made

12
by the Trustee. That level of analysis was appropriate in the context of asking whether

13
the Trustee's allegations were sufficient for this proceeding to continue, but this motion

14
asks for judgment in favor of the Trustee and demands both evidence and fuller

15
16
analysis. Finally (and as discussed more fully below), the FAC Dismissal Order's

17
conclusion that the Trustee's unjust enrichment/restitution claim is governed by the four-

18
year the statute of limitations for written obligations is inconsistent with this Court's

19
conclusion above that the DMA and this unjust enrichment/restitution claim do not share

20
the same subject matter.  The Court will accordingly consider the statute of limitations

21
issue afresh.

22
23
        2.  Applicable Statute of Limitations

24
        This action was commenced in May 2012.

25
26
        The statute of limitations is either (i) the two years provided under §339 for

27
obligations not founded upon a writing (*see, e.g., Iverson, Yoakum, Papiano & Hatch v.*

28
*Berwald*, 76 Cal. App. 4th 990, 996, (Cal. Ct. App. 2nd Dist. 1999), as modified on denial

of reh'g (Dec. 15, 1999); *Maglica v. Maglica*, 66 Cal. App. 4th 442, 452 (Cal. Ct. App. 4th

Dist. 1998), as modified on denial of reh'g (Sept. 28, 1998)) or (ii) the three years

provided under Cal. Civ. Code §338(d) for relief on grounds of mistake or fraud (*i.e.,* the

payments were mistakenly made by the Debtor instead of SCC JV Ventures *(see, e.g.,*

*F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 347-348 (Cal Ct. App. 4th Dist. 2008);

*Creditors Collection Serv. v. Castaldi*, 38 Cal. App. 4th 1039, 1043 (Cal. Ct. App. 4th

Dist. 1995)).  It is not four years, because (as discussed above), the Trustee's unjust

enrichment claim does not arise under a written contract.  If it did, then the existence of

that contract would preclude the unjust enrichment claim.

> However, a cause of action for unjust enrichment is not based on, and does not otherwise arise out of, a written contract. Rather, unjust enrichment is a common law obligation implied by law based on the equities of a particular case and not on any contractual obligation. (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388–389, 20 Cal.Rptr.3d 115.)

*Dintino*, 167 Cal. App. 4th at 346.

Applying these periods (and ignoring any applicable discovery delay discussed

below), the unjust enrichment claim would need to have accrued on or after either May

2009 (under a three-year statute of limitations) or May 2010 (under a two-year statute of

limitations.[8]

With respect to accrual, unjust enrichment requires receipt of a benefit and unjust

retention of the benefit at the expense of another.  Clearly, the benefit was received by

SCM each time it received a payment from the Debtor over the course of many months

from 2005 to 2008.  Thus, the unjust enrichment claims would arise whenever SCM's

retention of the fees became unjust; but when this occurred is not a simple question.

The D.C. Circuit has decided a number of cases on this issue, determining that the

---

[8] The Trustee commenced this action more than two years after the order for relief in the Debtor's bankruptcy case, so §108(a) does not provide any extensions.

retention became unjust when the defendant first refused to pay for the benefit. *Bregman v. Perles*, 747 F.3d 873, 876–77 (D.C. Cir. 2014) and the cases cited therein. But the Debtor never requested the return of this money. Holding that the statute did not run until the Trustee demanded payment would delay accrual indefinitely and would essentially allow the plaintiff Trustee to control the start of the limitations period. Thus, there is no clear cut date when SCM refused to return the management fees or SCM's retention otherwise became unjust.

Furthermore, the accrual of a claim based on mistake under Cal. Civ. Code §338 can be delayed until the plaintiff's discovery or reason to discover the mistake. S*ee, e.g., Dintino*, 167 Cal. App. 4th at 347-348.  That date has not been clearly established.

At this point (the resolution of a motion for summary judgment brought by the plaintiff), it suffices to say that the Trustee has not shown that - as a matter of undisputed fact - his unjust enrichment claim is timely. *Cf. Bregman*, 747 F.3d at 875 ("statute of limitations issues often depend on contested questions of fact").

3.   Applicability of §546(a)

The Trustee also argues that the Court entered an order extending and tolling the statute of limitations established by §546(a) for actions against SCM until June 1, 2012 and that §544(a), which is governed by §546(a) and under which the Trustee is granted all rights and powers of a judicial lien creditor, includes the right to pursue choses in action belonging to the Debtor.  This argument does not appear to be well taken.

The extent of the Trustee's powers under §544(a) is set by the powers granted to a judicial lien creditor under state law. *See, e.g., In re Michael*, 49 F.3d 499, 500 (9th Cir. 1995)("Section 544(a) of the Bankruptcy Code, the 'strong arm clause,' grants the

1   trustee certain powers under state law with respect to the debtor's property"). The cases

2   cited by the Trustee in support of §544(a) giving a trustee the power to pursue choses in

3   action were all decided under non-California law.  California law specifically provides

4   that a judgment creditor may take a lien on causes of action *that are the subject of a*

5   *pending action*. Cal. Civ. Proc. Code §696.030; §708.410.  I have not found any cases

6   allowing the judgment creditor to create a lien against choses of action that had not yet

7   been asserted in court and the specificity of §696.030 and §708.410's reference to "that

8   is the subject of a pending action" strongly suggests that a judicial creditor cannot levy

9   on such not-yet asserted choses in action. Thus, the Trustee's powers under §544(a) do

10  not appear to include the right to pursue choses in action.[9] In other words, the Trustee

11  has a right to pursue his unjust enrichment claim (because it is a chose in action that is

12  property of the estate), but he has not established that he has the right to do so under

13  §544(a)(1).

14

15      As genuine issues of fact remain as to the applicability of both laches and the

16  statute of limitations, each of these affirmative defenses prevents the Court from

17  granting summary judgment to the Trustee on his unjust enrichment claim.

---

[9] In response to the Court's tentative ruling on this point, the Trustee argued that §544(a)(1) gives him a judicial lien on all property of the estate and that "property" under the Bankruptcy Code has been broadly defined to include "causes of action" that could not be reached under state law.  The Trustee cites *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir. 1986), which holds that "regardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under section 541."  But this does not answer the question of whether it is the "property on which a creditor on a simple contract could have obtained such a judicial lien" required by §544(a)(1).  And the Trustee has not shown that a judgment creditor can place a judicial lien on unasserted choses in action under California law.

## RULING

Motion granted in part and denied in part. The Court cannot grant summary judgment to the Trustee on his unjust enrichment/restitution claim, but can grant summary adjudication that:

- The Trustee has established a claim for unjust enrichment/restitution for the Management Fees paid by the Debtor to SCM, except for the following issues:
    - Voluntary Payment Doctrine: Whether the Debtor's payments of Management Fees to SCM were made voluntarily and with the knowledge that the Debtor had no legal obligation to pay the Management Fees to SCM.
    - Incidental Benefit Doctrine: Whether the Debtor had legal obligations to pay Management Fees or whether these fees were paid to protect or improve the Debtor's property.
- The Defendants have failed to establish any defenses to the unjust enrichment/restitution claim, except for Laches and Statute of Limitations, which the Defendants may continue to assert.

## EVIDENTIARY OBJECTIONS

The Trustee has interposed numerous objections to the numerous declarations filed by the Defendants in support of their Opposition.

However, the Court's ruling is based primarily on the express terms of the DMA, the prior rulings of this Court, and a limited number of other facts.  Accordingly, the Court will consider only the evidentiary objections to the testimony that the Court considered in reaching its conclusions (not including Undisputed Facts proposed by the

Trustee that were not disputed by the Defendants), which is testimony regarding the

following issues:

1. That the Debtor had no employees and SCM performed the Debtor's day-to-day

   functions.

2. The Debtor's ownership structure.

3. Lehman's knowledge of and consent to the Debtor's payment of the

   Management Fees directly to SCM.

Any evidentiary objections not listed below addressed facts that were not relevant to the

Court's ruling herein.

   (In particular, the vast majority of the Defendants' "Additional Facts" support the

Defendants' argument that the course of dealing and other contracts governing the

Marblehead Project gave rise to an obligation by the Debtor to pay SCM. However, as

discussed above, the Court has already rejected this argument with the Declaratory

Relief Orders. Thus, the Court did not consider testimony supporting these Additional

Facts.)

Trustee's Evidentiary Objections to Declaration of Daniele Harrison

| Obj # | Ruling |
|-------|--------|
| 1-6 | Overruled |
| 7-9 | Sustained |
| 10-22 | Overruled |
| 23 | Sustained |
| 24-31 | Overruled |
| 32 | Sustained |
| 33-38 | Overruled |
| 39-46 | Sustained |

Trustee's Evidentiary Objections to Declaration of Bruce Cook

| Obj # | Ruling |
|-------|--------|
| 1-2 | Overruled |
| 3 | Sustained |

| | |
|---|---|
| 4 | Overruled |
| 5-8 | Sustained |
| 41-43 | Overruled |
| 44-45 | Sustained |

Trustee's Evidentiary Objections to Declaration of Bruce Elieff

| Obj # | Ruling |
|---|---|
| 7-9 | Overruled |
| 10 | Sustained |
| 54 | Overruled |

Trustee's Evidentiary Objections to Declaration of Frank Cappello

| Obj # | Ruling |
|---|---|
| 5 | Sustained |
| 7-8 | Overruled |
| 9 | Sustained |
| 10 | Sustained as to Lehman's knowledge, overruled as to Cappello's knowledge |

Trustee's Evidentiary Objections to Declaration of Jeffrey Cook

| Obj # | Ruling |
|---|---|
| 1-6 | Overruled |
| 7-9 | Sustained |
| 10-22 | Overruled |
| 23 | Sustained |
| 24-31 | Overruled |
| 32 | Sustained |
| 33 | Overruled |
| 34 | Sustained |
| 35 | Overruled as to first sentence, sustained as to second sentence |
| 36 | Overruled |
| 37-39 | Sustained |
| 40 | Overruled |
| 41 | Sustained |
| 42 | Overruled |
| 43 | Sustained |
| 44 | Overruled |
| 45 | Sustained |

Trustee's Evidentiary Objections to Declaration of Tom Rollins

| Obj # | Ruling |
|---|---|
| 1-10 | Overruled |
| 11 | Sustained |

| 12 | Overruled |
| 13-16 | Sustained |
| 17-18 | Overruled |
| 19 | Sustained |

###

Date: August 2, 2017

_____

Geraldine Mund
United States Bankruptcy Judge